UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BRIAN ANTHONY MARTINEZ,

                Plaintiff,

         -v-

BLOOMBERG LP; ANDREW LACK, *individually and as
CEO of Bloomberg LP's Multimedia Division*;
CATRIONA HENDERSON, *individually and as
Bloomberg LP's Regional Head of Human Resources*,

                Defendants.
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/10/12

11 Civ. 7514 (JMF)

OPINION AND
ORDER

JESSE M. FURMAN, United States District Judge:

      This action arises out of claims by Plaintiff Brian Anthony Martinez against his former employer, Bloomberg LP ("Bloomberg"), and two Bloomberg employees, Andrew Lack and Catriona Henderson. Specifically, in his complaint, filed on October 24, 2011, Plaintiff asserts a claim against Defendant Bloomberg for unlawful termination in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12111 *et seq.*, and claims against all Defendants for violations of the New York State Human Rights Law ("NYSHRL"), 15 N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), 8 N.Y.C. Admin. Code § 8-502(a) *et seq.* Relying on a forum selection clause in the employment agreement between Martinez and Bloomberg, Defendants Bloomberg and Lack now move, pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, for dismissal of the complaint in its entirety for improper venue. In the alternative, Defendants Bloomberg and Lack move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for dismissal of the NYSHRL and NYCHRL claims for lack of subject matter jurisdiction on the ground that the alleged discrimination had no

"impact" within New York.[1] For the reasons stated below, the Court finds that venue in the Southern District of New York is improper. Accordingly, Defendants' motion to dismiss pursuant to Rule 12(b)(3) is GRANTED and the complaint is dismissed.

## BACKGROUND

Where, as here, a defendant moves to dismiss for improper venue pursuant to Rule 12(b)(3), a court may consider evidence outside the four corners of the complaint, including affidavits and other documentary evidence. *See, e.g., Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005); *Cartier v. Micha, Inc.*, No. 06 Civ. 4699 (DC), 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). Accordingly, the following facts are drawn from the complaint and the affidavits submitted by the parties, and are construed in the light most favorable to the Plaintiff. *See Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) (noting that when a district court relies on pleadings and affidavits to grant a motion to dismiss on the basis of a forum selection clause, the court must view all facts in a light most favorable to the plaintiff).

Bloomberg is a privately held financial software, media, and data company with its principal place of business in New York City. (Compl. ¶ 2). At all times relevant to this action, Defendant Lack was the chief executive officer of Bloomberg's Multimedia Division, and Defendant Henderson was the regional head of Bloomberg's human resources department in the United Kingdom. (*Id.* ¶¶ 3-4). In September 1999, Martinez began working for Bloomberg as a freelance producer, and in April 2000, he began full-time employment in the company's New

---

[1]  Although there is no indication in the record that Defendant Lack was served with the complaint, he nonetheless joins in Bloomberg's motion. There also is no indication that Defendant Henderson was served with the complaint; she has not joined in the motion.

York office. (*Id.* ¶¶ 10-11). In early 2005, after a three-year stint in Bloomberg's Tokyo office, Martinez was reassigned to Bloomberg's London office. (*Id.* ¶ 12).

In connection with his relocation to the United Kingdom, Martinez signed a new employment contract with Bloomberg's London office on February 21, 2005 (the "Agreement"). (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 3). To the extent relevant here, the Agreement expressly designated Bloomberg's London office as Martinez's "normal place of business" (Asman Decl. Ex. 1 § 1.2); provided for circumstances under which Martinez's employment could be terminated (*id.* § 10); and set forth grievance procedures that governed the employment relationship. (*Id.* § 9). Most relevant for present purposes, the Agreement also contained a forum selection and choice of law provision. (*Id.* § 14.1). The clause provided, in relevant part, that the Agreement "shall be interpreted and construed in accordance with English law and any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts." (*Id.* § 14.1).

Martinez was promoted several times during his tenure at Bloomberg, eventually becoming Managing Director of Bloomberg Television International for Asia, Europe, the Middle East, and Africa, but in November 2010, his career "hit a brick wall." (Compl. ¶¶ 17, 21). A month or so earlier, Martinez, who is gay, had revealed to Henderson that he had been physically abused by his domestic partner. (*Id.* ¶¶ 22-23). After meeting with two separate doctors to receive treatment for his injuries, in late November 2010, Martinez met with Lack, who insisted that Martinez take a leave from work. (*Id.* ¶¶ 24, 27-29). Martinez had already planned to be on vacation from December 16, 2010, until January 3, 2011, but at Lack's insistence, he took an unofficial leave of absence beginning on November 29, 2010. (*Id.* ¶ 30). In mid-December, while on leave, Martinez received the results of his annual company review.

Although Martinez's performance was rated "exceptional," his bonus was not consistent with Bloomberg's historical pay practice or with his 2010 bonus. (*Id.* ¶¶ 34-35).

On January 4, 2011, Martinez returned to work. (*Id.* ¶ 36). The following month, Henderson and Lack met with Martinez and expressed concern that Martinez was "unwell." (*Id.* ¶¶ 43-44). According to the complaint, Lack and Henderson suggested to Martinez that the abuse he suffered may have "seriously impacted" his ability to perform his job responsibilities. (*Id.* ¶ 47). Henderson recommended that Martinez take additional medical leave for at least thirty days, which he did, beginning on February 15, 2011. (*Id.* ¶¶ 50, 53). In late March 2011, Martinez's doctor cleared him to return to work, but on April 1, 2011, Henderson told Martinez that it "may be better" for him to wait until May to return to work. (*Id.* ¶¶ 54, 55).

It appears that Martinez never returned to Bloomberg. (*See* Asman Decl. Ex. 2). While on medical leave, Martinez learned that Bloomberg was considering organizational changes relevant to his position at the company. (Compl. ¶ 57). By letter dated June 20, 2011, Bloomberg informed Martinez that the company was considering restructuring various company departments — a process that could "regrettably result in the elimination of [Martinez's] role . . . ." (*Id.* ¶ 64). The next day, an attorney representing Martinez in the United Kingdom e-mailed Bloomberg, stating that termination of Martinez's position would "give rise to" claims for unfair dismissal, whistleblowing, *and* discrimination. (Asman Decl. ¶ 15; *id.* Ex. 6). On July 29, 2011, Martinez was terminated from his employment with the company. (Compl. ¶ 65).

On October 24, 2011, Plaintiff filed the complaint in this case against Defendants Bloomberg, Lack, and Henderson, asserting a claim against Bloomberg under the ADA and claims against all three Defendants under the NYSHRL and NYCHRL. Three days later, Martinez filed a separate claim with the United Kingdom's Employment Tribunal ("UK

Employment Tribunal"), challenging the legality of his termination under English law (the "UK Proceeding"). (Asman Decl. ¶ 18). In his complaint in the UK Proceeding, Martinez alleged unfair dismissal, unlawful deduction of wages, and detrimental dismissal because of a protected disclosure. (*See id.* ¶ 19; *id.* Ex. 8). Martinez did not assert any claims for discrimination, despite his attorney's earlier e-mail to Bloomberg and the fact that the claim form he used to initiate the action explicitly asked whether he wished to assert claims for discrimination based on, among other things, sexual orientation or disability. (*See id.* ¶ 20; *id.* Ex. 8, at 9).

In January 2012, the UK Employment Tribunal held a "Directions Hearing," which is similar to a status conference, to discuss various procedural and scheduling matters in the UK Proceeding. (Defs.' Mem. 16). Although Defendants Bloomberg and Lack had notified Plaintiff and this Court months earlier that they intended to move to dismiss the current action on the basis of the forum selection clause (Docket No. 4), at the Directions Hearing, Martinez did not request leave to add any discrimination claims. (Defs.' Mem. 16). He did, however, submit an application to stay the UK Proceeding at least until the instant motion to dismiss was decided by this Court. (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n Mem.") 9-10). This application was denied and the UK Proceeding was scheduled to proceed on an expedited basis, with a hearing set for April 2012. (*Id.* at 10). Citing the prohibitively high cost of pursuing his claims in the United Kingdom, Martinez subsequently withdrew his claims in the UK Proceeding. (*Id.*).

## DISCUSSION

Defendants Bloomberg and Lack contend that Plaintiff's claims should be dismissed because the Agreement's forum selection clause required Plaintiff to bring this action in the United Kingdom. Plaintiff does not dispute that the forum selection clause is valid and, by its

terms, mandatory. Instead, he argues that the clause does not apply to his claims of discrimination and that, if it does apply to such claims, application of the clause in this case would be unreasonable or unjust. The Court agrees with Defendants.

### A. Applicable Law

As the Supreme Court and the Second Circuit have made clear, there is a strong federal policy in favor of enforcing forum selection clauses. *See, e.g., M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10, 12 (1972) (holding that courts should "give effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement," by specifically enforcing forum selection clauses); *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993) (noting the "strong public policy in favor of forum selection and arbitration clauses"). Among other things, judicial enforcement of such clauses removes uncertainty in economic transactions and ensures that the parties' expectations are fulfilled. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991); *Bremen*, 407 U.S. at 13-15; *Aguas Lenders Recovery Grp., LLC v. Suez, S.A.*, 585 F.3d 696, 700 (2d Cir. 2009). Moreover, international comity dictates that American courts enforce forum selection clauses in international agreements "out of respect for the integrity and competence of foreign tribunals." *Roby*, 996 F.2d at 1363.

The Second Circuit has adopted a four-part test to determine whether an action should be dismissed on the basis of a forum selection clause. *See Phillips*, 494 F.3d at 383-84.[2] The party

---

[2] Although the Second Circuit has established the test to be used where a party moves to dismiss on the basis of a forum selection clause, it has not settled the question of which provision of Rule 12(b) applies. *Compare Phillips*, 494 F.3d at 382 (analyzing the issue under Rule 12(b)(3)), *with AVC Nederland B.V. v. Altrium Inv. P'ship*, 740 F.2d 148, 152 (2d Cir. 1984) (analyzing the issue under Rule 12(b)(1)), *and Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505, 508 n.6 (2d Cir. 1998) (analyzing the issue under Rule 12(b)(6)). This Court agrees with Defendants that Rule 12(b)(3) is appropriate, although the issue is

moving for dismissal must demonstrate that: "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." *Altvater Gessler-J.A. Baczewski Intn'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009). If these requirements are met, the burden shifts to the non-moving party to rebut the presumption of enforceability by "making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 89 (quoting *Phillips*, 494 F.3d at 383-84) (internal quotation marks omitted). Where a forum selection clause grows out of arms-length negotiations between sophisticated parties, this burden is particularly heavy. *See Bremen*, 407 U.S. at 12.

## B. Analysis

In the present case, there is no dispute that the first two parts of the test are met. The Agreement between Martinez and Bloomberg mandates that "any dispute arising hereunder shall be subject to the exclusive jurisdiction of the English courts" (Asman Decl. Ex. 1 § 14.1), and Plaintiff concedes that the provision was "reasonably communicated" to him. (Pl.'s Mem. of Law 10). Instead, Martinez contends, first, that his discrimination claims are not subject to the forum selection clause because they do not "aris[e]" under the Agreement and, second, that enforcement of the forum selection clause would be unfair or unreasonable under the circumstances. The Court will address each argument in turn.

---

ultimately academic as Defendants move in the alternative pursuant to Rules 12(b)(1) and 12(b)(6). (Defs.' Mem. 8 n.4).

7

### 1. Martinez's Claims Are Subject to the Forum Selection Clause

As an initial matter, the Court must determine what law governs interpretation of the forum selection clause. Determining the scope of a forum selection clause is a matter of contractual interpretation. *See, e.g., Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009); *Phillips*, 494 F.3d at 387 (noting that a forum selection clause is "a creature of contract"). Thus, courts in this circuit have generally held that when a contract includes a choice of law clause, as the Agreement does here, the chosen forum's law governs interpretation of the forum selection clause. *See, e.g., U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 612 (S.D.N.Y. 2008). That view is consistent with dictum in *Phillips*, 494 F.3d at 384-86, and with the law in other circuits. *See, e.g., Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007); *Yavuz v. 61 MM, LTD*, 465 F.3d 418, 428 (10th Cir. 2006); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990). It is also the position taken by the parties in this case. (Defs.' Mem. 11-12; Pl.'s Opp'n Mem. 1). Accordingly, the Court will apply English law to determine the scope of the forum selection clause.[3]

The applicability of English law is significant in this case for two reasons. First, whereas a statutory employment discrimination claim does not depend on the existence of a contract under American law, *see, e.g., Cronas v. Willis Grp. Holdings, Ltd.*, No. 06 Civ. 15295 (GEL), 2007 WL 2739769, at *9-13 (S.D.N.Y. Sept. 17, 2007), that is not the case under English law. Instead, under the Equality Act 2010 (the "Equality Act" or "Act") — the English analogue to

---

[3]   Under Rule 44.1 of the Federal Rules of Civil Procedure, determination of the content and effect of foreign law presents a question of law for the Court. *See* FED. R. CIV. P. 44.1; *see also, e.g., In re Euromepa, S.A.*, 154 F.3d 24, 28 n.2 (2d Cir. 1998). The Rule permits the Court to consider "any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." In the present case, the parties have submitted declarations from English solicitors along with relevant English authorities.

the ADA, the NYSHRL, and the NYCHRL — a contract is a precondition to bringing the types of claims that Martinez brings in this case. *See* Equality Act 2010, c. 15, § 83(2) (U.K.) (defining "employment" as "employment *under a contract* of employment, a *contract* of apprenticeship or a *contract* personally to do work") (emphasis added); *see also id.* §§ 39-40 (protecting employees from discrimination and harassment in employment); *cf. Muschett v HM Prison Servs.*, [2010] EWCA (Civ) 25 [24], [39]-[40] (holding, with respect to a predecessor of the Equality Act, that the claimant could not state a claim for employment discrimination without establishing that a contractual relationship existed between her and her employer).

Second, under English law, forum selection clauses are construed very broadly. In *Fiona Trust & Holding Corporation v Privalov*, [2007] EWCA (Civ) 20, [5], for example, the Court of Appeal considered a contractual clause referring "any dispute arising under this charter" to arbitration. Lord Justice Longmore, writing for the Court, concluded that "[a]lthough in the past the words 'arising under the contract' have sometimes been given a narrower meaning, that should no longer continue to be so." *Id.* ¶ 18. Instead, the Court held broadly that, under English law, "any jurisdiction or arbitration clause in an international commercial contract should be liberally construed. The words 'arising out of' *should cover 'every dispute except a dispute as to whether there was ever a contract at all'* . . . ." *Id.* (citation omitted) (emphasis added). The House of Lords upheld this determination on appeal, holding that unless the language of an arbitration clause makes clear that certain questions are intended to be excluded from an arbitrator's jurisdiction, all claims should be heard in the same forum. *See Fiona Trust & Holding Corp. v Privalov*, [2007] UKHL 40, [12]-[13] (appeal taken from Eng.).

Significantly, although the clause at issue in *Fiona Trust* pertained to arbitration, the Court's language and reasoning extended to forum selection provisions as well. Lord Justice

9

Longmore referred expressly to "any jurisdiction or arbitration clause." *Fiona Trust*, [2007] EWCA (Civ) 20, [18]. And in the House of Lords, Lord Hope of Craighead explained:

> The proposition that any jurisdiction . . . clause in an international commercial contract should be liberally construed promotes legal certainty. It serves to underline the golden rule that if the parties wish to have issues as to the validity of their contract decided by one tribunal and issues as to its meaning or performance decided by another, they must say so expressly. Otherwise they will be taken to have agreed on a single tribunal for the resolution of all such disputes.

*Fiona Trust*, [2007] UKHL 40, [26]; *see also Skype Techs. SA v Joltid Ltd.*, [2009] EWHC (Ch) 2783, [14]-[17] (noting that Lord Hope "clearly regarded [forum selection] clauses and arbitration clauses as serving similar purposes with the result that their interpretation should be approached in the same way"). In the wake of *Fiona Trust*, therefore, English courts have construed forum selection clauses such as the one in this case "widely and generously." *UBS AG v HSH Nordbank AG*, [2009] EWCA (Civ) 585, [60].

Although the question is a close one, these two factors — namely, the contractual basis for employment discrimination claims under English law and the broad construction given to forum selection clauses by English courts — compel the conclusion that Martinez's claims are indeed subject to the Agreement's forum selection clause.[4] After all, the dispute between the parties is obviously not "a dispute as to whether there was ever a contract at all." *Fiona Trust*, [2007] EWCA (Civ) 20, [18] (internal quotation marks omitted). And Martinez's claims "aris[e]" under the Agreement in the sense that, under English law, such employment discrimination claims are predicated on the existence of a contract. *Cf. Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993) (holding, albeit presumably under American law, that

---

[4] In light of these two factors, Martinez's reliance on Judge Lynch's decision in *Cronas* (*e.g.*, Pl.'s Opp'n Mem. 1, 2, 12, 17), which held that a Title VII claim was not subject to an arbitration clause governed by New York law, is misplaced.

a forum selection clause governing contract claims extended to a claim of tortious interference with a business relationship and stating that, "[r]egardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action"). Put simply, it is the Agreement between Martinez and Bloomberg that, under English law, gives rise to his employment discrimination claims; in the absence of the Agreement, he would not be able to bring such claims at all. Accordingly, it appears more likely than not that, were an English court to rule on the matter, it would conclude that Martinez's claims "arise[]" under the Agreement and thus fall within the forum selection clause.

In contending otherwise, Martinez makes several arguments. First, implicitly conceding that his claims would be subject to the forum selection clause if the Court's holding in *Fiona Trust* applied, Martinez contends that *Fiona Trust* is limited to international commercial contracts and does not apply in the employment context because of the inequality in bargaining power between an employer and employee. (Pl.'s Opp'n Mem. 15-17). To be sure, this contention finds some support in the language of the *Fiona Trust* opinions, which refer to the "international commercial context" and the interests of "rational businessmen." *See, e.g., Fiona Trust*, [2007] EWCA (Civ) 20, [17] ("For our part we consider that the time has now come for a line of some sort to be drawn and a fresh start made *at any rate for cases arising in an international commercial context*. . . . If any *business man* did want to exclude disputes about the validity of a contract, it would be comparatively simple to say so.") (emphasis added); *Fiona Trust*, [2007] UKHL 40, [13] ("[T]he construction of an arbitration clause should start from the assumption that the parties, *as rational businessmen*, are likely to have intended any dispute arising out of the relationship into which they have entered or purported to enter to be decided by the same tribunal.") (emphasis added). But that language aside, there is nothing in the opinions

indicating that the Courts intended to limit their broad interpretation of forum selection clauses to international commercial contracts.  Additionally, it appears that English courts frequently apply the same principles of contract interpretation to employment contracts as they do to international commercial contracts.  *See, e.g., Beckett Inv. Grp. Ltd. v Hall*, [2007] EWCA (Civ) 613, [15]-[16] (applying commercial contract principles to contract of employment); *James v Greenwich London Borough of Greenwich*, [2008] EWCA (Civ) 35, [23]-[24] (same).  (*See also* Declaration of Plaintiff's Expert Louise Skehan ¶ 17 (summarizing "[t]he principles of English Law of contractual interpretation" by quoting at length from an international commercial contract case)).

*Autoclenz Ltd. v Belcher and Others*, [2011] UKSC 41, upon which Martinez relies (Pl.'s Opp'n Mem. 15; Declaration of Plaintiff's Expert Louise Skehan ¶¶ 32-33), does not suggest otherwise.  In that case, a suit by car washers against their putative employer for payment of the minimum wage, the Court did say that "the relative bargaining power of the parties must be taken into account in deciding whether the terms of any written agreement in truth represent what was agreed and the true agreement will often have to be gleaned from all the circumstances of the case, of which the written agreement is only a part." *Autoclenz*, [2011] UKSC 41, [35]. The issue in *Autoclenz*, however, was not how to interpret the given terms of a contract, let alone a forum selection clause, but rather how to determine what the terms of the contracts at issue were in the first instance.  Here, there is no dispute that the parties agreed to the forum selection clause as written; the only dispute is how the clause should be interpreted, and *Autoclenz* sheds no light on that question.  Moreover, as the very existence of a clause governing the choice of law and forum selection makes clear, the Agreement at issue in this case — between a multinational corporation and a sophisticated international businessman who eventually became Managing Director of Bloomberg Television International for Asia, Europe, the Middle East, and

Africa — is, in many respects, closer to the sort of international commercial contract considered in *Fiona Trust* than it is to the car washer contracts considered in *Autoclenz*.

Next, citing cases in which courts have held that parties may not deprive the UK Employment Tribunal of jurisdiction over employment discrimination claims by agreeing to arbitration, Plaintiff argues that "it is highly unlikely that an English court, would in this instance defer to the contracting parties" by interpreting the forum selection clause to require that his discrimination claims be brought in the England. (Pl.'s Opp'n Mem. 14). As a preliminary matter, this argument all but concedes that the parties intended for the claims in this case to be brought in England. But, in any event, the argument does not withstand scrutiny. Indeed, if anything, the cases cited by Plaintiff actually cut against him, not in his favor, as they stand for the proposition that parties cannot, through private agreement, oust the UK Employment Tribunal of jurisdiction. *See, e.g., Clyde & Co LLP v Bates Van Winkelhof*, [2011] EWHC (QB) 668, [42]-[44]. Here, enforcement of the forum selection clause would not oust the UK Employment Tribunal of jurisdiction. To the contrary, it would aid the Tribunal's jurisdiction by making clear that Martinez's discrimination claims should have been brought there, not here.

Finally, Martinez contends that his discrimination claims do not "aris[e]" under the Agreement both because they are a creature of statute — namely, the Equality Act — rather than contract and because the Equality Act extends, in some instances, to non-employees, who may bring claims notwithstanding the lack of a contractual relationship. (Pl.'s Opp'n Mem. 12-13). The fact that a claim under the Equality Act is technically a statutory tort, however, does not answer the question of whether it arises under the contract. *Cf., e.g., Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 329 (S.D.N.Y. 2008) ("[C]ourts, including this one, have held that a contractually-based forum selection clause will also encompass tort claims if the tort

13

claims ultimately depend on the existence of a contractual relationship between the parties . . . .") (internal quotation marks omitted) (citing cases); *Anselmo v. Univision Station Grp., Inc.*, No. 92 Civ. 1471 (RLC), 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) ("A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship . . . ."). And whether or not a person could hypothetically bring a claim under the Equality Act that would not depend on the existence of a contract is irrelevant to the question of whether *Martinez's* claims in this case are within the scope of the forum selection clause. The undisputed fact is that, had Martinez brought his discrimination claims in England, he would have had to prove the existence of the Agreement to prevail. It follows that his claims arose from the Agreement and therefore fall within the scope of the forum selection clause. *Cf. Phillips*, 494 F.3d at 390-92 (holding, under federal law, that copyright claims did not fall within a forum selection clause applying to claims that "arise out of" a contract because the plaintiff's claims could proceed on their own terms without reference to the contract, which was "only relevant as a defense" to the plaintiff's claims).

### 2. Martinez Has Not Overcome the Presumption of Enforceability

For the foregoing reasons, the forum selection clause in this case is presumptively enforceable and the burden is on Martinez to rebut that presumption. Unlike the third prong of the *Phillips* test, the question of whether a non-moving party can rebut the presumption of enforceability is governed by federal law even if the contract contains a choice of law provision. *See Phillips*, 494 F.3d at 384. Further, because of the Second Circuit's "strong public policy in favor of forum selection . . . clauses ," *Roby*, 996 F.2d at 1361, exceptions to the presumption of enforceability are narrowly construed, *see, e.g., Tropp v. Corp. of Lloyd's*, 385 Fed. Appx. 36, 37 (2d Cir. 2010) (summary order), and a party seeking to rebut the presumption bears a "heavy

14

burden." *Bluefire Wireless, Inc. v. Cloud9 Mobile Commc'ns, Ltd.*, No. 09 Civ. 7268 (HB), 2009 WL 4907060, at *2 (S.D.N.Y. Dec. 21, 2009). Specifically, as the Second Circuit has held, dismissal is required unless the non-moving party is able to show that (1) the forum selection clause is the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement would contravene a strong public policy of the forum state; or (4) trial in the selected forum would be so difficult and inconvenient that plaintiffs will effectively be deprived of their day in court. *See Phillips*, 494 F.3d at 392.

In the present case, Martinez ignores the fact that the Second Circuit has identified these as the only four ways to rebut the presumption of enforceability and therefore makes little or no effort to show how he satisfies one of them. Instead, he argues generically that enforcement of the forum selection clause in the particular facts and circumstances of this case would be "unreasonable or unjust." (Pl.'s Opp'n Mem. 10). More specifically, he contends that dismissal of his suit would be unreasonable or unjust because (1) the statute of limitations on his English discrimination claims has run (Pl.'s Opp'n Mem. 2, 17-18); (2) the remedies available under the ADA and English law are materially different, especially insofar as he could recover attorney's fees under the ADA but not under English law (Pl.'s Opp'n Mem. 18-19); and (3) he has been "required" to abandon the UK Proceedings "as a consequence of the prohibitive cost of the [UK Proceedings] and the unavailability of prevailing party attorneys fees . . . ." (Pl.'s Opp'n Mem. 19). These arguments fall far short of carrying Martinez's burden.

First, it is well established that a forum selection clause "must be enforced" even if that results in "the forfeiture of some claims that could have been brought in a different forum." *Roby*, 996 F.2d at 1360-61. In *Bremen*, for example, the Supreme Court upheld the enforcement of a forum selection clause even though the contractual provisions purporting to exculpate the

defendant from liability would be enforced in England. 407 U.S. at 15-16. And applying that same principle, courts have consistently held that a forum selection clause is enforceable even if, as may be the case here, the applicable statute of limitations has run in the relevant forum. *See, e.g., Brodsky v. Match.com LLC*, No. 09 Civ. 5328 (NRB), 2009 WL 3490277, at *3 (S.D.N.Y. Oct. 28, 2009); *see also, e.g., Kelso Enters. Ltd. v. M/V Diadema*, No. 08 Civ. 8226 (SAS), 2009 WL 1788110, at *2 (S.D.N.Y. June 23, 2009) ("The Second Circuit has not directly ruled on whether the expiration of the statute of limitations in the forum selected by an enforceable forum selection clause would render enforcement of the clause unjust. However, courts in this district have overwhelmingly answered that question in the negative."). This is for good reason. After all, to hold that an expired statute of limitations would vitiate an otherwise enforceable forum selection clause would "create a large loophole for the party seeking to avoid enforcement of the forum selection clause [who could] simply postpone [his] cause of action until the statute of limitations has run in the chosen forum and then file [his] action in a more convenient forum." *Brodsky*, 2009 WL 3490277, at *3 (quoting *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 33 (2d Cir. 1997)) (alterations in original).[5]

Second, the fact that attorney's fees or other remedies would not have been available to Martinez had he brought his suit in England and prevailed is no reason to release him from the forum selection clause to which he agreed. As the Second Circuit has repeatedly made clear, a party does not rebut the presumption of enforceability by showing "that the foreign law or procedure [is] merely . . . different or less favorable than" the law or procedure of the forum in

---

[5] In any event, as explained in the affidavit of Defendants' expert (Taylor Decl. ¶¶ 33-34, 37), the UK Employment Tribunal has the discretion to extend the time under which a discrimination claim may be brought and may allow Martinez to amend his claim to assert his untimely discrimination claims. *See, e.g., Chief Constable of Lincolnshire Police v Natasha Caston*, [2009] EWCA (Civ) 1298, [17]-[18].

which a plaintiff brings his or her claims. *Roby*, 996 F.2d at 1363, 1366; *see also Phillips*, 494 F.3d at 393. Indeed, were that enough, a forum selection clause would be meaningless, as a party with a choice of forum could — and presumably would — bring suit in whichever forum had law that was more favorable to him or her. Instead, to defeat a forum selection clause on the basis of differences in governing law, a party must show that the law to be applied is "*fundamentally* unfair" or that enforcement "contravenes a *strong* public policy of the forum state." *Phillips*, 494 F.3d at 392 (emphasis added). Martinez has not made, and could not make, that showing. Nor could he show that the relevant differences "were not foreseeable when he agreed to litigate in England." *Id.* at 393 (citing *Bremen*, 407 U.S. at 16).

Finally, the fact that the costs associated with litigating Martinez's claims in England (and the unavailability of attorney's fees under English law) led him to voluntarily discontinue his claims there makes no difference to the analysis. The mere fact that litigation in a foreign forum is "more costly or difficult" does not provide a "sufficiently strong showing" that enforcement of a forum selection clause would be unreasonable or unjust. *Phillips*, 494 F.3d at 384, 393. Nor do a plaintiff's personal financial difficulties. *See, e.g., Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *10 (S.D.N.Y. Sept. 24, 2010); *see also, e.g., Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262 (JFK), 2004 WL 421793, at *4 (S.D.N.Y. Mar. 5, 2004) (enforcing a forum selection clause because "[s]imply claiming financial distress does not warrant setting aside a valid forum selection clause"); *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 37 F. Supp. 2d 186, 190 (E.D.N.Y. 1998) ("Plaintiff has failed to demonstrate that [plaintiff corporation's] 'financial [ ] devastation' or [corporation president's] fear of traveling to Israel . . . warrant disregarding the parties' explicit agreement to resolve disputes in Israel.") (citation omitted). Once again, were the law

otherwise, a party could easily evade enforcement of a forum selection clause, simply by foregoing — or discontinuing — an action in the foreign forum.

In sum, the hardships cited by Martinez — most of which are a product of his voluntary decisions to litigate his claims simultaneously in both England and here and then to drop the English suit — are not enough to rebut the presumption of enforceability and relieve him from the consequences of his agreement to the forum selection clause. The clause therefore bars Martinez from litigating his claims against Bloomberg in the United States. It also bars him from litigating his claims against Lack and Henderson, even though they are not signatories to the Agreement, as they are "sufficiently close" to Bloomberg for enforcement of the forum selection clause to be "foreseeable." *In re Optimal U.S. Litig.*, 813 F. Supp. 2d 351, 369 (S.D.N.Y. 2011); *see also, e.g., Roby*, 996 F.2d at 1360 ("[E]mployees or disclosed agents of an entity that is a party to an [ ] agreement [containing a forum selection clause] are protected by that agreement. . . . If it were otherwise, it would be too easy to circumvent [such clauses] by naming individuals as defendants instead of [entities].").

## CONCLUSION

For the reasons set forth above, the motion of Defendants Bloomberg and Lack to dismiss for improper venue (Docket No. 7) is GRANTED and Plaintiff's complaint as to those Defendants is dismissed in its entirety. In light of that ruling, the Court need not, and does not, reach Defendants' alternative argument that Plaintiff's state law claims should be dismissed.[6]

---

[6] If Defendants were correct, and their alternative argument about the lack of a nexus between Plaintiff's claims and New York went to whether the Court had subject matter jurisdiction over his state law claims (Defs.' Mem. 17), the Court would arguably have been required to reach that issue first. *See, e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (holding that a federal court must reach the question of subject matter jurisdiction before reaching the merits of a claim). The Court, however, agrees with those courts that held

Plaintiff is hereby ORDERED to show cause in writing, no later than August 24, 2012, why the complaint should not also be dismissed against Henderson for the same reasons or, in the alternative, for failure to serve the complaint in a timely fashion. If the Court does not receive any such communication from the Plaintiff, the Court will dismiss the case altogether without further notice to either party.

SO ORDERED.

Dated: August 10, 2012
New York, New York

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　JESSE M. FURMAN
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

that such an argument goes to whether a complaint states a claim, not to whether the Court has the power to adjudicate the claim. *See, e.g., Lucas v. Pathfinder's Pers., Inc.*, No. 01 Civ. 2252 (BSJ), 2002 WL 986641, at *1 (S.D.N.Y. May 13, 2002); *Torrico v. Int'l Bus. Machs. Corp.*, 213 F. Supp. 2d 390, 396 (S.D.N.Y. 2002); *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 527 (S.D.N.Y. 2000); *see also Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869, 2877 (2010) ("[T]o ask what conduct [a statute] reaches is to ask what conduct [the statute] prohibits, which is a merits question. Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case.") (internal quotation marks omitted). Accordingly, dismissing the complaint for improper venue under Rule 12(b)(3) without reaching Defendants' alternative argument does not run afoul of *Steel Co.*